# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CLARABELLE WHEELER, | CASE NO. 3:15–cv–00013 |
| *Plaintiff,* | |
| v. | OPINION |
| THE STANDARD FIRE INSURANCE COMPANY, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

This is an insurance dispute initiated by Plaintiff ClaraBelle Wheeler ("Plaintiff" or "Dr. Wheeler") after her carrier denied coverage for damage—*i.e.*, a collapsed foundation wall—sustained to a barn. (*See* dkt. 1-1 at ECF 1-7). Defendant Standard Fire Insurance Company ("Defendant") asks for summary judgment on Plaintiff's claims for declaratory judgment and breach of contract, as well as her request for attorneys' fees. (Dkt. 22).

To oversimplify, Defendant argues that there is no coverage under the policy because Plaintiff failed to give "prompt notice" of "a loss" suffered to the barn when several trees struck it, crushing its porch. The motion will be denied as to the claims for breach of contract and declaratory judgment. There is a dispute of material fact concerning whether the damage to the barn porch and foundation wall was one indivisible loss or two separate losses, a dispute which undermines the legal arguments made by Defendant. The motion for summary judgment will be granted as to attorneys' fees.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

## FACTS

This case concerns what happened to an old barn when a storm knocked several trees onto it. Naturally, the trees caused significant damage, namely, crushing the barn's porch. Plaintiff repaired the porch damage (for which she does not seek coverage in this lawsuit) and did not report it to Defendant until nearly six months later, when the foundation wall in the barn's basement collapsed. It is coverage of the wall collapse that is disputed.

The insurance policy at issue, which Defendant concedes generally covered the barn and was effective during the time at issue, imposed a duty on Plaintiff, the insured, to give prompt notice of a loss. It reads:

> in case of *a loss* to covered property, we have no duty to provide coverage under
> this policy if the failure to comply with the following duties is *prejudicial* to us.

(a) Give *prompt notice*;

(Dkt. 1-1 at ECF 36 (emphasis added)).

After a storm in early March 2013, Plaintiff discovered that "[f]ive large tress fell against the Barn with the bulk of the weight of the trees striking a stone wall between double doors and the single door. The wooden porch was mostly crushed. The wooden railing and banisters were knocked loose, and some were broken. There were pieces of stone and mortar on the porch and ground." (Dkt. 23-1 at ECF 4, 6 (Interrog. Nos. 2, 4); *see id*. at ECF 19 (RFA No. 1)).

Although Plaintiff observed this damage, she did not notice any other defects at the time. She inspected the porch herself and did not seek a cost estimate or have a professional inspection conducted at the time. (Dkt. 23-1 at ECF 6-9 (Interrogs. Nos. 6-7, 9(c)-(d), 10)). Nor did she photograph the damage. (Dkt. 23-3 (Rudman Dec.) ¶ 4; *see* dkt. 23-1 at ECF 16 (RFP Nos. 5-6)).

Plaintiff did not make a claim against the policy because she believed the cost of the repairs would be less than the policy's deductible. Instead, she undertook the repairs herself. Specifically, after purchasing materials, she hired two unnamed "day laborers" to use her tools to do the repairs, which she "directed and witnessed." (Dkt. 23-1 at ECF 6 (Interrog. No. 5)). Plaintiff does not know the name, address, or telephone number of these laborers, can identify them only as a Caucasian and a Hispanic, and paid them an unknown amount in cash. (Dkt. 23-1 at ECF 4-5, 8 (Interrog. Nos. 3, 8)). The work included tree removal, debris cleanup, and repairing the porch. (Dkt. 23-1 at ECF 8 (Interrog. No. 9(a))).

Time passed. In late August 2013, Plaintiff heard a rumbling noise coming from the

barn's basement and went to investigate. (Compl. ¶ 7).[1] She had heard a similar disturbance a few days prior but dismissed it as noise from the cows in the barn. (*Id*.). In fact, the noise was caused by the collapse of the foundation basement wall on the side of the barn that the trees fell in March 2013. Plaintiff then reported the porch damage and wall collapse to Defendant on August 28, 2013, almost six months after the trees fell on the barn. (Dkt. 23-1 at ECF 19 (RFA No. 2)).

Defendant retained a structural engineer, Richard Ruckman, to perform a site inspection on September 3, 2013. (Dkt. 23-3 at ECF 1-2). Ruckman concluded that—given the months-long period since the trees fell, as well as Plaintiff's inability to provide necessary information about the state of the trees, porch, and foundation in March 2013—he not could "assess whether or determine that the fallen trees were the cause of damage to the foundation wall, as opposed to other apparent causes such as long term deterioration, underground hydrostatic water pressure on the foundation wall, or excessive lateral water pressure resulting from saturation (and inherent expansion and/or shifting) of clay soils directly against the stone foundation wall." (Dkt. 23-3 at ECF 2; *see also id*. at ECF 4, 7).

Both Plaintiff and her expert, engineer Michael Curry, maintain that the fallen trees from March 2013 caused the foundation wall's collapse on or about August 28, 2013, as well as the porch damage. (Dkt. 23-1 at ECF 19 (RFA No. 1) & ECF 3 (Definition No. 8); dkt. 23-2 (Curry Report) at ECF 5). Curry concluded that the trees "likely caused significant structural damages to the barn, and led to the collapse of the front stone foundation wall." (Dkt. 23-2 at ECF 5). He

---

[1]     Defendant on occasion relies on the complaint in its statement of facts. This is not included in Rule 56(c)(1) as citable evidence on summary judgment. However, Plaintiff does not object to this practice (understandably, given that she pled those facts to begin with) and, in fact, largely adopts it in her brief. Consequently, such facts cited by Defendant are deemed admitted (or stipulated) for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2) & 56(c)(1)(A).

believed it probable that the wall cracked upon impact and caused a partial collapse that "may not have been visible from" the outside of the barn. (*Id.*). He stated the collapse "could . . . be described as a progressive collapse that began when the trees hit the barn." (*Id.*). He asserted that—although a crack in the foundation was possibly perceivable in March 2013—the obvious damage of the crushed porch "may have distracted" Plaintiff "from noticing serious cracks in the barn walls, and without entering the basement and inspecting the foundation walls, [she] would not have noted the damage." (*Id.*).

Dennis Moler, another structural engineer, also was retained to inspect the barn by the company Plaintiff hired to make the wall repair, M3-Marshall Contracting & Masonry, Inc. Moler visited the barn on September 20, 2013 to evaluate the structure and the collapsed wall. (Dkt. 23-4 at ECF 1). Although he believed the tree impact was "likely" a "contributing factor in the wall's demise," he—like Defendant's engineer Ruckman—could not draw a definitive conclusion about whether the trees were the cause of the collapse. (Dkt. 23-4 at ECF 2-3).

Based on these facts, on September 9, 2013, Defendant denied coverage of the foundation wall collapse, citing the policy's notice condition, its non-coverage for earth movement, and Defendant's inability to assess whether the trees were the "sole cause of the damages" due to the delay in reporting. (Dkt. 1-1 at ECF 70-72). This lawsuit ensued.

## ANALYSIS

### I.  The Policy's Notice Condition and the "Loss" (or Losses) at Issue

There are critical but related issues in this motion: (**1**) what constitutes "a loss" under the policy; (**2**) whether there is one indivisible loss, or two separate losses (denoted the "porch loss" and "foundation wall loss") caused by the same event. Defendant conceptualizes the facts of this case as involving only one loss and, from that premise, argues that Plaintiff failed to give

"prompt notice" of the loss (by waiting six months to report it) which "prejudiced" Defendant (by depriving it of the opportunity to mitigate the loss and investigate its cause).

Plaintiff, however, views this case involving two losses, although she does not develop that view at length. She asserts "the Policy requires 'prompt notice' of a loss, [and] it is undisputed that there was no visible evidence of a 'loss' *to the Barn foundation* until August 28, 2013," when notice of such was given. (Dkt. 25 at 4 (emphasis added); *see also id.* at 7 ("[s]he had no notice of the [foundation wall] loss until she heard and investigated the loud noise on August, 28, 2013," thus having "no notice of the loss until" then)).

As explained below, this dispute is one of material fact. Once this dispute is recognized and viewed in Plaintiff's favor, Defendant's legal argument breaks down because it proceeded on the theory of a single loss. *See*, *e.g.*, *infra* footnote 5. Specifically, its conclusion that the notice condition was violated is supported by comingling the delayed notification of one loss (the porch) with the prejudiced suffered by Defendant as to the other loss (the foundation wall). *See infra* § I.C.

A.      Issue (1):  The policy language—"Loss" versus "Occurrence"

Although the parties quote the notice condition, they devote little analysis to its text. An "insurance policy is a contract to which the ordinary rules of contract interpretation apply." *State Farm Fire & Cas. Co. v. Wallace*, 997 F. Supp. 2d 439, 447 (W.D. Va. 2014). "When the language of an insurance policy is clear and unambiguous, courts must give the language its plain and ordinary meaning and enforce the policy as written." *Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 449 (E.D. Va. 2006).

Insurance policies often define their coverage (and the duty to notify) by reference to an "occurrence." According to Black's Law Dictionary, an "occurrence" is:

[s]omething that happens or takes place; specif., an accident, event, or continuing condition that results in personal injury or property damage that is neither expected nor intended from the standpoint of an insured party. This specific sense is the standard definition of the term under most liability policies.

Black's Law Dictionary (10th ed. 2014). Courts likewise agree that the term refers to some happening or event that gives rise to diminution in value, damage, or injury. *See*, *e.g., State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 504, 423 S.E.2d 188, 192 (1992); *State Farm Fire & Cas. Co. v. Wallace*, 997 F. Supp. 2d 439, 445-46 (W.D. Va. 2014); *Aetna Cas. & Sur. Co. v. Jett*, 52 F.3d 320, at *1 (4th Cir. 1995) (*per curiam*). Indeed, an "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" that results in property damage. (Dkt. 1-1 at ECF 26).

If the policy had used the term "occurrence" in the notice condition, this might have been an easy case: Plaintiff indisputably had notice of the fallen trees that damaged the barn in March 2013. And her six-month delay in reporting that "occurrence" (the fallen trees) could have—under all the circumstances—violated her duty to give prompt notice for the reasons put forth in Defendant's brief.

But the notice condition in the policy here uses the word "loss," not "occurrence." That distinction matters. A "loss" is synonymous with damage or harm, particularly in the insurance context. *See* Black's Law Dictionary (10th ed. 2014) ("The amount of financial detriment caused by . . . an insured property's damage, for which the insurer becomes liable."); *see also Charter Oak Fire Ins. v. Carteret Cty. Bd. of Comm'rs*, 91 F.3d 129, at *2 (4th Cir. 1996) (*per curiam*) (applying North Carolina law when discussing "prompt notice of the *loss or damage*," in that case water damage) (emphasis added); *Mount Vernon Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 224 F. Supp. 666, 669 (E.D. Va. 1963) (discussing "loss" in a notice provision as referring to a "condition" rather than an event or occurrence). "Loss" is not explicated in the

"Definitions" section of the policy. (Dkt. 1-1 at ECF 25-26). Consequently, its ordinary meaning—supported by Defendant's statement at oral argument that "'loss' here is damage to property"—should be used. So while the falling of the trees in March 2013 was an occurrence, only a "loss" triggered Plaintiff's duty to notify. *See Nationwide Mut. Fire Ins. Co. v. Overstreet*, 568 F. Supp. 2d 638, 648 (E.D. Va. 2008) (finding "unavailing" argument that delay in giving insurer notice was justified because policy required notification of "occurrences," not "claims").

## B. Issue (2): The facts show one cause and two losses

This, then, raises the question of how many losses existed. If there was simply one indivisible loss caused by the trees, then Defendant's position might prevail based on Plaintiff's purportedly unreasonable delay in reporting the loss and the prejudiced suffered by Defendant as a result. But if there were two losses, then further analysis is needed. *See*, *e.g.*, *infra* footnote 5.

No one disputes, of course, that the fallen trees caused the porch damage. Plaintiff and her expert concluded that the fallen trees also caused the foundation wall collapse. (Dkt. 23-1 at ECF 19 (RFA No. 1) & ECF 3 (Definition No. 8); dkt. 23-2 (Curry Report) at ECF 5). Thus, there is only one cause for purposes of summary judgment. Yet when construing the facts in the light most favorable to Plaintiff, there are two losses at play.[2]

---

[2] This conclusion may *seem* counterintuitive given that there is a single cause, but it is mandated by the applicable standard on a Rule 56 motion, which does not authorize the Court to assess the facts based on its own intuitive view of them. As explained in § I.A., *supra*, the conclusion is also a function of the policy's use of the term "loss" rather than "occurrence." Of course, a party could contract around the result here by tying the notice condition to an occurrence rather than a loss.

Additionally, the notion that one event or cause can entail multiple, distinct losses is common. A hurricane causes numerous losses, some simultaneously (two houses side-by-side) and others at different times (a house in Miami and a house in Tampa). The same bullet can cause different injuries to different people at the same time. And a nuclear meltdown may cause the same person different injuries at different times (severe burning initially, cancer years later).

In discovery propounded to Plaintiff and filed by Defendant in support of its motion, Defendant segregated the "Porch Loss" from the "Foundation Wall Loss." (Dkt. 23-1 at ECF 2-3 (Definitions 4, 11)). Defendant also defined "The Loss" separately to include "the Porch Loss *and/or* the Foundation Wall Loss." (*Id*. at ECF 3 (Definition 8) (emphasis added)). Defendant then used "The Loss" throughout its discovery requests. (*E.g*., *id*. at ECF 10, 14, 16, 18-19). By segregating the two losses definitionally—and by utilizing the widely-criticized, ambiguous phrase "and/or" in the broader, aggregate definition of "The Loss"[3]—Defendant has, at minimum, created a triable inference that two losses existed. The Court must therefore assume, in Plaintiff's favor, that there are two losses, because a reasonable juror could so conclude from the evidence.

## C. With Multiple Losses, Summary Judgment Is Not Appropriate in Light of the Arguments Presented

As explained above, Defendant's argument is premised on the existence of a single loss. But because there are two losses for purposes of summary judgment, each loss must be analyzed separately under the notice condition.[4] Defendant's position thus fails because its analysis of the notice condition's elements—lack of "prompt notice" and "prejudice"—mixes and matches aspects of two separate losses. Defendant's "prompt notice" argument relies on the six-month

---

[3] *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 436 (4th Cir. 2004); *United States v. Bush*, 70 F.3d 557, 562 (10th Cir. 1995); *Jara v. Nunez*, No. 613CV1426ORL37GJK, 2015 WL 8659954, at *3 (M.D. Fla. Dec. 14, 2015); Bryan Garner, *Ax these terms from your legal writing*, ABA Journal (April 1, 2014) (summarizing judicial criticism of "and/or" formulation), *available at* http://www.abajournal.com/magazine/article/ax_these_terms_from_your_legal_writing/.

[4] The notice condition here refers to "a loss," thus indicating that each particular loss (and corresponding compliance with the notice condition) should be considered independently. And even if the issue was unclear (which it is not), ambiguities in insurance policies are construed against the insurer. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009); *Suntrust Mortgage, Inc. v. United Guar. Residential Ins. Co. of N.C.*, 508 F. App'x 243, 249 (4th Cir. 2013); *Fid. & Cas. Co. of N.Y. v. Commander*, 231 F.2d 347, 351 (4th Cir. 1956); *Aetna Ins. Co. v. Carpenter*, 170 Va. 312, 327, 196 S.E. 641, 647 (Va. 1938).

notification after the porch loss, but its "prejudice" argument relies on its inability to assess the cause of the foundation wall loss or mitigate it.[5] Summary judgment must therefore be denied as to those claims.[6]

## II.     Attorneys' Fees

Plaintiff's complaint seeks attorneys' fees. Defendant argues that Plaintiff has not put forth any grounds for shifting fees to Defendant if Plaintiff prevailed. (Dkt. 23 at 19-20). The complaint pleads no basis, such as a contractual term, for their recovery. Defendant also asserts that "Dr. Wheeler did not disclose any claim for costs or attorneys' fees in her Rule 26(a)(1) disclosures [and, for the first time in response to discovery,] listed costs and attorneys' fees as a

---

[5]     Conceivably, violating the notice condition as to one loss could arguably foreclose coverage of other losses. Standard principle of contract interpretation would apply to that position, of course. *See, e.g., supra* note 4; *Transit Cas. Co. v. Hartman's, Inc.*, 218 Va. 703, 708, 239 S.E.2d 894, 896 (Va. 1978) ("absurd results are to be avoided" when construing insurance contacts).

Defendant identified its "best cases" to the Court at oral argument. But even assuming that a violation of the notice condition as to the porch loss is established, the cases cited by Defendant do not in fact address the factual situation of two losses. *Hill v. Allstate Ins. Co.*, 962 F. Supp. 1244, 1245-48 (C.D. Cal. 1997), which comes the closest, is not illuminating because it did not focus on the meaning of "loss" or inquire whether there might be two separate losses at issue. Rather, it merely assumed there was one loss and proceeded accordingly. *See also Celena Invs., Inc. v. XL Specialty Ins. Co.*, 2012 U.S. Dist. LEXIS 40503 (S.D. Fla. Mar. 26, 2012) (no fact-pattern of two separate losses, vacillating between whether it was a "loss" or an "occurrence" at issue); *1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541 (Fla. Dist. Ct. App. 2013) (not involving two separate losses); *State Farm Fire and Cas. Co. v. Sutphin*, No. 7:07-cv-489 (W.D. Va. June 18, 2008) (analyzing an "occurrence" and not discussing two separate losses); *Gov't Employees Ins. Co. v. Gilmer*, 32 Va. Cir. 94 (1993) (involving notice of an "accident" and not two losses). In light of these authorities' dissimilar facts, the better view is that Defendant has not raised the argument at this juncture.

[6]     Defendant also cursorily asserts that summary judgment is warranted because Dr. Wheeler "fail[ed] to protect the property from further damage." (Dkt. 23 at 2, 13 n.7). Defendant does not develop this argument and therefore it is not adequately presented on summary judgment. For instance, there is no citation to authority regarding the argument, it is mentioned only in an introductory paragraph and a footnote, and, correspondingly, the parties' briefs and oral argument focused almost exclusively on the notice issue. Even if the argument was considered, there is likely a jury question as to whether the steps taken by Dr. Wheeler to investigate and repair the barn after the porch loss were reasonable. (*Cf.* dkt. 23 at 2 n.1).

category under which she seeks recovery, but did not disclose any basis for this demand." (*Id*. at

19). Plaintiff's opposition brief does not present any argument against Defendant's position.

While Va. Code Section 38.2-209 does provide fees for a prevailing insured, it requires a

judicial finding that the insurer denied coverage in bad faith. A reasonableness standard applies

to this inquiry and generally includes consideration of:

> whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

*Cuna Mut. Ins. Soc. v. Norman*, 237 Va. 33, 38, 375 S.E.2d 724, 727 (Va. 1989). The

undisputed facts do not show a lack of good faith in light of these considerations. Even though

Defendant is not entitled to summary judgment, it correctly observes that it has put forth

colorable and good-faith bases for denying coverage.

*      *      *

For the foregoing reasons, Defendant's motion for summary judgment will be denied as

to the declaratory judgment and breach of contract claims, and granted as to attorneys' fees. An

appropriate order will issue.

The Clerk of the Court is hereby directed to send a certified copy of this Opinion to all

counsel of record.

Entered this __23rd__ day of March, 2016.

_____<br>
NORMAN K. MOON<br>
UNITED STATES DISTRICT JUDGE